IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED FOOD & COMMERCIAL WORKERS, LOCAL 1995, | ) ) ) | |
| Plaintiff, | ) ) | NO. 3:20-cv-00948 |
| v. | ) ) ) | JUDGE RICHARDSON |
| THE KROGER COMPANY, et al., | ) ) | |
| Defendants. | ) ) ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiff United Food & Commercial Workers, Local 1995 ("Union")'s Motion for Judgment on the Pleadings and to Compel Arbitration (Doc. No. 19, "Motion"), supported by an accompanying Memorandum of Law. (Doc. No. 20). Defendants, The Kroger Company and Kroger Limited Partnership I ("KLPI"), filed a response (Doc. No. 25), and Plaintiff filed a reply. (Doc. No. 28, "Reply"). For the reasons stated herein, Plaintiff's Motion will be **GRANTED** in part and **DENIED** in part.

### **BACKGROUND**[1]

Plaintiff is a labor organization, which is currently party to a collective bargaining agreement ("CBA") with The Kroger Company, Nashville Division. (Doc. Nos. 15 at ¶ 3, 15-1 at 6). The Kroger Company, Nashville Division is part of Defendant KLPI. (Doc. No. 15-1 at 4). An

---

[1] The background facts are drawn from the Amended Complaint and the documents filed with the Amended Complaint. The Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Unless noted, none of the facts recited herein are disputed by the parties.

exclusive bargaining relationship has existed for many years between Plaintiff and KLPI. (Doc. No. 15 at ¶ 8). The parties' current CBA governs the term from May 12, 2019 through May 6, 2023. (*Id.*).

The current CBA contains an agreed-upon "Dispute Procedure" outlined in length in Article 7.[2] (Doc. No. 15-1 at 10-12). Article 7 reads in pertinent part as follows:

> A. The Union shall have the right to designate Stewards for each store. The store Stewards so designated shall not exceed four (4) per store [six (6) in Marketplace stores]. The store Stewards shall perform their duties with the least inconvenience to the Employer as possible. The Union shall have the authority to submit grievances to arbitration and to withdraw and settle grievances. The Parties recognize the employee's right to appeal any decision not to arbitrate to the Executive Board of the Union, therefore, the Employer and the Union agree to extend the thirty (30) calendar day time period referred to in Deadlocks/Arbitrations when necessary, to allow for the review of such decisions. Any grievance arising out of scheduling must be presented by Saturday noon (or twenty-four (24) hours from the time the schedule is posted, whichever is later) of the week the schedule is posted by the employee involved; otherwise, said employee will be deemed not to have a valid grievance.
>
> . . .
>
> C. No Constructive Advice Record shall be used for progressive discipline nor in arbitration by either party after eighteen (18) months from the date of issuance. Last chance, final warning Agreements will remain in effect. Discharges/suspension pending shall proceed directly to Step 3 of the grievance procedure within twenty-one (21) calendar days of the discharge/suspension pending. All Constructive Advice Records will be forwarded to the Union Office within forty five (45) calendar days from the date the CAR was issued.
>
> . . .
>
> D. . . . *Should there be any grievance, dispute or complaint over the interpretation or application of the contents of this Agreement*, there shall be an earnest effort by the Parties to settle the matter promptly. The following steps shall be followed:
>
> Step 1) A Step 1 meeting will be held within fourteen (14) calendar days of receipt of a grievance or the grievance may be considered denied and may proceed to Step 2, by conference between the aggrieved employee, the Steward, or both, and the Unit Manager. Written answer will be given to the Steward and the Union Representative within seven (7) calendar days of the Step 1 meeting. Grievance

---

[2] The Court has chosen to include only the parts of Article 7 most relevant to the question of whether and under what circumstances a grievance is subject to mandatory arbitration.

settlements at Step 1 are non-precedent setting. A Union Representative may be requested to be present at the meeting.

Step 2) After receiving a written answer from Step 1 or after the time limits in Step 1 have expired, the Union Representative may, within fourteen (14) calendar days, request a Step 2 meeting with the District Manager or designee. The request must be made in writing, and the Step 2 meeting will be held within fourteen (14) calendar days of receipt of written request or the grievance may be considered denied and may proceed to Step 3. Grievance settlements at Step 2 are non-precedent setting. Grievances heard at Step 2 shall be answered in writing to the Union Representative within seven (7) calendar days of the meeting. If grievances aren't settled in Step 2, they may be referred to Step 3 as outlined below.

Step 3) After receiving a written answer from Step 2 or after the time limits in Step 2 have expired the Union Representative may, within fourteen (14) calendar days, request a Step 3 meeting with an official or officials of the Union and the Division President or a representative of the Employer so delegated by the Division President, or both. The request must be made in writing and the Step 3 meeting will be held within twenty-one (21) calendar days of receipt of written request. Grievances heard at Step 3 shall be answered in writing to the Union Representative within ten (10) calendar days of the meeting or the grievance may be considered denied. In the event that the last Step fails to settle satisfactorily the grievance, and either party wishes to submit it to arbitration, the party desiring arbitration must so advise the other party in writing within forty-five (45) days from the Step 3 written response.

. . .

**Deadlocks/Arbitrations**

If arbitration is requested, the request must be made to the Standing Panel of Arbitrators within forty-five (45) calendar days of receiving a written decision in Step 3 or after the time limits in Step 3 have expired. The party requesting arbitration must notify the other party of such request.

. . .

**Arbitrator's Binding Decision**

The decision of an arbitrator so selected shall be binding upon all Parties to the arbitration. All of the fees, costs and expenses of the arbitration shall be borne equally

(Doc. No. 15-1 at 10-12) (emphasis added). The Court does not see where Article VII expressly makes arbitration *mandatory* as opposed to merely permissive. And the (italicized) reference to the parties committing to earnestly resolving grievances (or disputes or complaints, though the Court herein is using the term "grievance") "over the interpretation or application of the contents

of this Agreement" does not say that the parties have agreed specifically to *mandatory arbitration* of such grievances. Plaintiff nevertheless suggests in the Amended Complaint that the parties have agreed in Article VII that any grievance within the scope of Article VII—*i.e.*, any grievance "over the interpretation or application of the contents of this Agreement"—is subject to mandatory arbitration. (Doc. No. 1 at ¶ 11). And as Defendants have not challenged that suggestion (though of course Defendants challenge that it means the grievance here must be arbitrated), the Court accepts it for purposes of the instant Motion.

Notably, the references to arbitration are not very thorough and are spread throughout Article VII. In this sense, there is no one "arbitration clause" as such, but given its observations in the paragraph immediately above, the Court concludes that it is appropriate to conduct the analysis here as if there was an "arbitration clause" that provides for mandatory arbitration "over the interpretation or application of the contents of this [CBA]".

Sometime in early 2020, a Kroger facility, known as a Local Fulfilment Center, opened in Knoxville, Tennessee.[3] Employees at this facility are employed by the Kroger Company in some capacity. (Doc. No. 15 at ¶ 18). A dispute arose between the Union and KLPI as to whether Knoxville Local Fulfillment Center employees were covered by the parties' CBA. (*Id.* at ¶ 21). On June 5, 2020, an Organizing Director from the Union emailed KLPI's Nashville Division Human Resource Associate & Labor Manager, Charles Ervin, to file a grievance about the "exclusion of workers" at the Knoxville facility from Union membership. (Doc. No. 15-2 at 2). In that email, the Union also requested a date for a Step 3 meeting. (*Id.*). On June 9, 2020, Mr. Ervin responded to

---

[3] The Court draws this fact partially from Plaintiff's Amended Complaint at ¶ 17, which Defendants denied in full in their Answer. However, in their Response to Plaintiff's Motion for Judgment on the Pleadings, Defendants acknowledge some of the information as true. (Doc. No. 25 at 4-5).

the Union and refused to process the grievance because "[t]he location is not a store covered by the CBA." (Doc. No. 15-3 at 2).

Over the course of June and July, the Union tried on two occasions to begin arbitration proceedings. On June 29, 2020, the Union's Secretary-Treasurer emailed an arbitrator[4] to inform him of his selection "to hear an arbitration between Kroger Nashville Division and United Food and Commercial Workers Local Union 1995." (Doc. No. 15-4 at 2). Mr. Ervin, who was copied on the email, responded to inform the arbitrator that Kroger was refusing to process the grievance and would not consent to his jurisdiction. (*Id.*). The Union tried this tack again on July 7, 2020, with similar non-success. (*Id.* at 6). In November of 2020, Plaintiff filed the present action to compel Defendants to arbitration. On December 14, 2020, Plaintiff filed its First Amended Complaint. (Doc. No. 15, "Amended Complaint").

## **LEGAL STANDARD FOR RULE 12(c) MOTIONS, GENERALLY**

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Traditionally, to evaluate a 12(c) motion, the court reviews the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Center, Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007). However, in cases like the present one, where the party moving for judgment on the pleadings is the plaintiff rather than the defendant, a slightly different standard is required. In considering a motion by the plaintiff for judgment on the pleadings, the Court will determine whether "on the undenied facts alleged in the

---

[4] The Union selected from the CBA's approved list of arbitrators (Doc. No. 15-1 at 12), choosing Patrick Hardin in the June 29th email and Samuel Nicholas, Jr. in the July 7th email.

complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Lowden v. Cty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (quoting *U.S. v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963) ("[T]he question is whether the facts alleged in the answer are material in the sense that, if proved, they will constitute a legal defense to the plaintiff's claim.")). This standard generally provides a substantial advantage for a defendant, like Defendants here, opposing a plaintiff's 12(c) motion. But as explained more fully below, this advantage actually is more than eviscerated by the applicable substantive law—to which the Rule 12(c) standard must be applied—applicable to the particular (and limited) relief sought by Plaintiff in this lawsuit. In short, although in general there is in practical (if not necessarily legal) terms a presumption against entering judgment on the pleadings in favor of a plaintiff, there is in practical (and arguably also legal) terms a presumption in favor of entering judgment on the pleadings for a plaintiff seeking the limited relief Plaintiff is seeking here.

As a general rule, if matters outside the pleadings are presented on a Rule 12(c) motion and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) ("Because Plaintiff presented matters outside of the pleadings with respect to Defendant's Rule 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment."). This applies even if the non-excluded material outside the pleadings is not actually relied upon or even considered at all by the court. *See id*. However, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin*

*Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Notably, the Court has not considered any information that would mandate conversion of the instant Motion into one for summary judgment.[5]

## NATURE OF THE "JUDGMENT" SOUGHT BY PLAINTIFF, *i.e.*, A JUDGMENT MANDATING COMPELLED ARBITRATION

The outcome of the instant motion is driven heavily by the precise nature of the "judgment" Plaintiff seeks in this case via its motion for judgment on the pleadings under Rule12(c). The nature of that requested judgment is such that the standard under Rule 12(c)—which typically is skewed heavily in favor of a non-movant, especially a non-movant defendant—in this case actually is skewed heavily in favor of the Plaintiff even though it is the movant.

The kind of action Plaintiff has brought is unique in that Plaintiff's requested relief is to compel Defendants to arbitrate an alleged contract dispute. As the parties aptly put it in their recent joint status report to the Court, "there is only one issue in this case due to its unique status – whether the Defendants must arbitrate a grievance under the labor contract." (Doc. No. 31 at 1). Via this action, Plaintiff asks the Court only to require Defendants to submit to arbitration of the applicable grievance;[6] Plaintiff does not request some other form of relief, such as money damages. What Plaintiff seeks in this action is to require Defendants to resolve the grievance in arbitration (wherein Plaintiff would seek to obtain therein various kinds of underlying substantive relief that

---

[5] It is odd, given that Defendants are responding to a Motion for Judgment on the Pleadings, they write in their Response that the facts they rely on are "almost entirely[] outside of the pleadings." (Doc. No. 25 at 2). Some of these facts would have been in the pleadings (specifically, Defendants' Answer) except that Defendants' chose to broadly deny facts alleged in Plaintiff's Complaint only to acknowledge such facts as true in later filings. However, even if Defendants have relied on matters that are both outside the pleadings and not cognizable on a 12(c) motion, the Court has excluded such matters from its consideration in making its decision on Plaintiff's Motion. Therefore, the Court need not and does not treat this Motion as a motion for summary judgment.

[6] Beyond asking for attorney's fees, costs and expenses, Plaintiff prays in its complaint only for "an order directing the Company to submit to the arbitration of the Union's June 5, 2020 grievance and to participate in good faith with all procedures necessary to select an arbitrator, conduct a hearing, and secure a final and binding arbitration decision." (Doc. No. 1 at 7).

Plaintiff is not seeking herein). In short, the Court is dealing here not with the more common situation of a *defendant's motion* to compel arbitration as a means to resolve the plaintiff's claims for relief as stated in the plaintiff's complaint filed in court, but rather with a *plaintiff's action* merely to compel arbitration of disputes with the defendant. As the parties jointly note, the result of this action is either that the Court compels arbitration or that it does not compel arbitration. (*Id.*).

### STANDARDS APPLICABLE TO A RULE 12(c) MOTION FOR JUDGMENT ON AN ACTION SEEKING COMPELLED ARBITRATION

Plaintiff contends that the Court can determine the proper result (from among those two competing and irreconcilable possible results) via a judgment on the pleadings because "no discovery is required to demonstrate the existence of a binding collective bargaining agreement, the existence of a broad arbitration clause, and the existence of a dispute over the interpretation of the CBA's coverage language." (Doc. No. 19 at 5).

Defendants respond that viewing the pleadings in the light most favorable to them, "the Court must conclude that Defendants could prove a set of facts which would support a plausible defense that the grievance is not substantively arbitrable." (Doc. No. 25 at 1). Perhaps this is true; it seems likely that the Court could find such a set of facts at this stage, especially because in determining whether Plaintiff is entitled to judgment as a matter of law, the Court must accept only the "*undenied* facts alleged in the complaint" and also must "assum[e] as true all the material allegations of fact in the answer." *See Lowden*, 709 F. Supp at 546 (emphasis added). The Court could see how, under this standard, the Court could conclude that the facts could plausibly suggest that the grievance is not arbitrable under the CBA.

But Defendants miss the mark because, under applicable law, it is not enough that Defendants could prove a set of facts that would plausibly suggest that the grievance is not

substantively arbitrable. This is because federal law recognizes a heavy preference for arbitration, as the Sixth Circuit has explained:

> The Supreme Court has made it repeatedly clear that:
>
> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
>
> *AT & T Technologies v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960)). The presumption of arbitrability is particularly applicable to broad arbitration clauses. *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. 1415 (finding presumption of arbitrability particularly applicable to arbitration clause covering "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *United Steelworkers of America v. Mead Corp.,* 21 F.3d 128, 132 (6th Cir.1994) (finding presumption of arbitrability particularly applicable to arbitration clause covering grievances "involving the interpretation of, or compliance with, this Agreement"); *International Union, UAW v. United Screw & Bolt Co.,* 941 F.2d 466, 472–473 (6th Cir.1991) (finding presumption of arbitrability particularly applicable to arbitration clause covering "matter[s] involving the interpretation or application of, or compliance with any of the terms of this Agreement").

*United Steel Workers of Am. v. Century Aluminum of Kentucky*, 157 F. App'x 869, 872 (6th Cir. 2005). These principles effectively deny Defendants the strong position held by a defendant opposing a plaintiff's motion for judgment on the pleadings in other, more typical kinds of cases. The upshot essentially is that Plaintiff is entitled—even right now, at this early stage—to the judgment it seeks in this lawsuit not only if it shows that that arbitration clause *must* be construed in its favor to cover the grievance here at issue, but also if it shows merely that the arbitration clause *could* be construed in its favor. That is, if the arbitration clause is *at all* susceptible of an interpretation that covers the applicable grievance, then Plaintiff is entitled to judgment. Or to put the same concept in different terms (those suggested by *Century Aluminum*), Plaintiff is entitled to

judgment if it cannot be said that the arbitration clause is not susceptible of an interpretation whereby it covers the applicable grievance. And if (considering whatever relevant facts the Court must accept as true on a Rule 12(c) motion) the arbitration clause is at all susceptible of an interpretation that covers the applicable grievance, then Plaintiff is entitled to judgment on the pleadings. This standard places Plaintiff in a strong position at the outset, even though the facts the Court accepts as true generally cut in favor of Defendants (since the Court accepts Defendants' version of the facts as to any disputed factual issue).

## ANALYSIS

I. **Even at the pleadings stage, it is clear that the applicable grievance is subject to arbitration**.

Given the applicable standards, it is not hard to see why plaintiffs might be able to prevail on Rule 12(c) motion in this kind of case, which is exactly what the plaintiff did in *Century Aluminum*. There, the Court granted the plaintiff judgment on the pleadings because, "[r]esolving doubts in favor of arbitration as provided for under the CBA, we cannot say with positive assurance that the only reasonable interpretation of the LCA expressly excludes the [dispute at issue] from arbitration."[7] *Id.* at 874. Judgment on the pleadings in favor of Plaintiff likewise would be appropriate here if the Court were to determine merely that it cannot say with assurance that the only reasonable interpretation of the CBA expressly excludes the applicable grievance from arbitration.

---

[7] In context, it is clear that the court meant to say, in substance, "resolving doubts in favor of arbitration (as provided for under the CBA), as we must under applicable law. . . ." That is, the court meant that it was resolving doubts in favor of arbitration because doing so was required under *applicable law*, and did not mean to say that it was resolving doubts in favor of arbitration based on *some language in the in the CBA specifically saying that doubts should be resolved in favor of arbitration*.

The Court takes a step back to note how it is that the Court could make this determination in Plaintiff's favor.[8] The Court first addresses the law governing the arbitration clause. Although the parties do not address the applicable law governing the interpretation of the arbitration clause, it has been said that "interpretation of the arbitration clause and grievance procedures contained within the collective bargaining agreement is governed by federal law." *Vera v. Saks & Co.*, 218 F. Supp. 2d 490, 493 (S.D.N.Y. 2002), *aff'd,* 335 F.3d 109 (2d Cir. 2003). The Court believes, however, that it is more precise and accurate to say that "[i]nterpretation of an arbitration clause of a collective bargaining agreement is governed by state contract law principles, although the Supreme Court has instructed district courts that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Operative Plasterers & Cement Masons Int'l Ass'n, AFL-CIO v. Int'l Bhd. of Painters & Allied Trades, Loc. Union 1486 of Long Island*, 954 F. Supp. 568, 571 (E.D.N.Y. 1997) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). To the extent that state law principles govern how a court goes about construing a contract—or considering what constructions could be considered reasonable—Kentucky law, Tennessee law or Alabama law all would be logical possibilities given the geographical scope of the CBA (Doc. No. 15-1 at 7), but the CBA simply does not indicate which state law governs. But in any event, the Court believes that whether Kentucky, Tennessee, Alabama, or federal principles are properly deemed applicable, the following analysis would be appropriate, as it is essentially axiomatic that a contractual provision must be construed based on the provision being deemed unambiguous (the primary possibility) or, if option one is inapplicable

---

[8] In so doing, the Court gives due attention to where (if ever) in the analysis the presence of disputed facts conceivably could defeat the Motion.

because the contract is ambiguous, then based on the contract being ambiguous (the secondary possibility).

More specifically, the first possibility for the Court to rule in Plaintiff's favor is for the Court to find as a matter of law (a) that the CBA on its face is unambiguous with respect to the question of whether the applicable grievance is within the scope of the arbitration clause,[9] and (b) the answer to that question (unambiguously) is yes, meaning the grievance must be arbitrated. The second possibility is for the Court, although finding that the CBA is ambiguous with respect to that question, to find based on undisputed facts that the ambiguity necessarily must be resolved with an affirmative answer to that question. Neither party speaks in terms of these two possibilities, but the Court finds it necessary to do so to explain whether it is appropriate to determine at this juncture that the arbitration clause could reasonably be construed to encompass the instant grievance—which as noted above is the only determination the Court need make on the instant Motion.

As for the first possibility, the Court looks for guidance to *Century Aluminum*, finding it highly persuasive though obviously non-binding (as it was not published in the Federal Reporter).[10] There the arbitration clause applied to grievances "concerning the interpretation or application of or compliance with the provisions of this Agreement." 157 F. App'x at 873. The

---

[9] The threshold question of whether a contract is ambiguous is one of law. *See Park v. Unum Life Ins. Co. of America*, 702 F. Supp. 2d 934, 937 (E.D. Tenn. 2010).

[10] *Century Aluminum* differs from the instant case in that it involves a construction not only of the inclusive scope of the arbitration clause, but also of a particular exclusion of certain grievances from a separate agreement (a so-called Last Chance Agreement) executed by the union member to which the grievance occurred. But the fact that *Century Aluminum* involved the latter additional issue, renders the case, if anything, even more telling because the court's resolution of the issue (a rejection of the applicability of the exclusion) served to further highlight the strength of the presumption in favor of arbitration.

arbitration clause here is quite similar in scope, covering as it does grievances concerning "the interpretation or application" of the CBA. True, it does not cover grievances concerning "compliance with" the CBA, but the notion of "compliance with" the CBA is essentially subsumed in the notions of "the interpretation or application" of the CBA anyway. Such an arbitration clause is a "broad" arbitration clause, and thus renders the presumption of arbitrability of the instant grievance "particularly applicable." *Id. Century Aluminum* thus teaches that the Court must presume that the particular grievance in this case is arbitrable. It also teaches that the Court should look at the language of the arbitration clause itself, look at the nature of the grievance, and see whether the nature of the grievance can reasonably be said to fit within such language. *Id.* Although *Century Aluminum* did not use the terminology of "[un]ambiguous," its gist is clearly that if the arbitration clause is *unambiguous* as to whether the grievance reasonably can be said to fit within it, that is the end of the matter unless the party opposing arbitration can point to some exclusion taking the grievance out of mandatory arbitration.

The Court finds that the arbitration clause here *unambiguously* is broad enough that it is susceptible to a reasonable interpretation whereby it covers the alleged grievance. Or, to state it the alternative way, the arbitration clause is *unambiguous as to* whether it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute: the arbitration clause unambiguously indicates that this cannot be said. There is no dispute as to what the grievance is. As Defendants put it, the Union is objecting to the refusal "to bind the Supply Chain Division's Knoxville Fulfillment Center to the Nashville Division's labor contract [.]" (Doc. No. 25 at 6). To the same effect, Plaintiff explains that the grievance "concern[s] whether the CBA applies to" the Knoxville Local Fulfillment Center. (Doc. No. 20 at 4). The language of the arbitration clause is such that it is unambiguous as to whether it reasonably could be construed

to cover such a grievance. If anything, the arbitration clause unambiguously can *only* (and not just reasonably) be construed to cover such a grievance, which patently is a grievance concerning "the interpretation or applicability" of the CBA.

Because the arbitration clause unambiguously is broad enough to enable Plaintiff to prevail on the Motion, the Court need not consider the second possibility. In other words, because the arbitration clause is not ambiguous as to the question involved here, the Court need not and should not get into any underlying facts to determine whether the arbitration clause applies. The only facts that matter are those undisputed ones that enable the Court to reach the conclusion it has reached: the language of the arbitration clause and the nature of the grievance. As Plaintiff puts it (correctly, except perhaps insofar as Plaintiff states that The Kroger Company as well as KLPI are bound by the CBA):

> The Kroger Company and Kroger Limited Partnership I are bound by the Parties' CBA, and they have both agreed therein to submit to binding arbitration when the Union timely grieves a dispute "over the interpretation or application" of the CBA's coverage clause. These facts are not genuinely disputed, and they require compelling Kroger to arbitration.

(Doc. No. 28 at 1).

Seeking to avoid this result, Defendants point to a variety of disputed facts, claiming that they prevent judgment on the pleadings. But the argument is flawed because it: (1) fails to account for the fact that, as explained above, Defendants start behind the eight-ball on this Rule 12(c) motion (unlike defendants opposing Rule 12(c) motions in other kinds of cases); (2) the factual disputes to which it points are immaterial to whether the grievance must be arbitrated, and instead go to who should win the arbitration; and, relatedly; (3) puts the cart before the horse by asserting in essence that the CBA does not apply to the Knoxville Local Fulfillment Center, which is actually

the very issue that is subject to arbitration and thus is for the arbitrators (and not this court) to decide.

Defendants also rely on the principle that where the merits of the claim are bound up with the question of arbitrability, the court's duty to determine whether the party intended the dispute be arbitrable trumps its duty to avoid searching the merits. (Doc. No. 25 at 9 (quoting *Communication Workers v. Avaya, Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012))). But that is inapplicable here, because the question of arbitrability is easily separable from the merits of the claim. Such a question is very straightforward and is dictated entirely by the *nature*, and not in any way by the merits, of the grievance.

Defendants make an additional argument,[11] namely, that for the Court to compel arbitration via this action, there would need to be a determination from the National Labor Relations Board ("NLRB") that the Supply Chain Division, which allegedly operates the Knoxville Local Fulfilment Center, "constitute[s] one appropriate bargaining unit" with The Kroger Company, Nashville Division. This argument is without merit for two reasons: (1) federal courts are authorized to "exercise jurisdiction over suits brought to enforce collective bargaining agreements," *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 298 (1971), and (2) the determination of whether the CBA applies to the Knoxville Local Fulfillment Center is a contract interpretation question properly left to the arbitrator, not a representational question subject to the NLRB's exclusive jurisdiction.[12] *See Paper, Allied*

---

[11] In the Reply, Plaintiff treats this argument as two distinct arguments: one relating to the NLRB's jurisdiction preempting federal courts' jurisdiction and the second relating to whether Plaintiff is seeking to combine disparate bargaining units. However, it is presented in Defendants' Response as a single argument, which is how the Court will address it.

[12] The NLRB retains exclusive jurisdiction over labor-management disputes that are "primarily representational." *See Int'l Bhd. of Elec. Workers, Loc. 71 v. Trafftech, Inc.*, 461 F.3d 690, 695

*Industrial, Chemical & Energy Workers Intern. Union v. Air Products & Chemicals, Inc.*, 300 F.3d 667 (6th Cir. 2002) (finding that the question of whether a CBA between a company and a union—which covered the company's chemical plant—also covered the company's newly built power plant was a question of contract interpretation and could be compelled to arbitration by a federal court).

II. **KLPI is subject to arbitration, but the Court cannot conclude at the pleading stage that The Kroger Company is subject to arbitration**.

So the grievance here is subject to arbitration. And it is undisputed, and admitted by Defendants in their answer (Doc. No. 17), that KLPI is a party to the CBA. (Doc. No. 28 at 1 n.1 (citing Doc. No. 17 ¶ 8)). Thus, KLPI is subject to arbitration of the grievance. The Kroger Company, however, is another matter. Defendants deny that The Kroger Company is a party to the CBA. (Doc. No. 17 ¶ 8). This is problematic for Plaintiff, which seeks to send both KLPI and The Kroger Company to arbitration, because the heavy presumption in favor of arbitration does not entail a heavy presumption in favor of sending *any particular Defendant* to arbitration. Instead, to prevail on its Rule 12(c) motion as to The Kroger Company in particular, Plaintiff must satisfy the usual Rule 12(c) standard. Again, this means showing "on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Lowden v. Cty. of Clare*, 709 F. Supp. 2d at 546. Thus, the Court must take as true Defendants' allegation (which the Court believes indeed qualifies as a factual allegation) that The Kroger Company is not a party to the CBA.

---

(6th Cir. 2006). The Sixth Circuit recognizes "two types of situations in which a dispute will be treated as primarily representational: where the Board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter." *Id*. Neither situation is applicable to this case.

Notably, even if the Court could disregard this allegation on the grounds that (supposedly) it is irrefutably contradicted by the face of the CBA, the allegation is not irrefutably contradicted by the face of the CBA. True, it is irrefutable that "The Kroger Company, Nashville Division & The Kroger Company, Louisville Division" is a party (or, are parties) to the CBA. But on the face of the CBA, the Court cannot say whether this party (or these parties) are the same as Defendant The Kroger Company, *i.e.*, a particular "Ohio corporation with its corporate headquarters and principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202-1100." (Doc No. 15 at 2). Given prevailing convention regarding corporate names (meaning formal and informal names, and legal and assumed names), the Court simply cannot make this equation at this time. The Court understands why Plaintiff would assert this equation, but that matter is not a certain one. And there is no question that Defendants have set forth a factual basis for disputing this equation.

Accordingly, although the Court could make this equation later on in this litigation, and thereby deem The Kroger Company subject to arbitration along with KLPI, the Court declines to do so at this juncture.

## CONCLUSION

For the reasons discussed, Plaintiff's Motion will be granted in part and denied in part. In particular, it will be granted as to KLPI and denied as to The Kroger Company. Moreover, the Court will solicit the parties' input as to how this case should proceed in light of this split resolution, in particular, whether KLPI should be ordered to arbitration without The Kroger Company, or whether the issues as to The Kroger Company should be resolved before KLPI is sent to arbitration.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE